## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONALD ELLIS,                                  *

    Plaintiff                             *

    v.                                          *                    CIVIL NO. JKB-18-03931

PALISADES ACQUISITION XVI
LLC, and, PROTAS, SPIVOK &                      *
COLLINS, LLC,

    Defendants                          *

   *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Donald Ellis ("Plaintiff") filed suit against Palisades Acquisition LLC and Protas, Spivok & Collins, LLC ("Defendants") alleging that Defendants attempted to collect a debt from Plaintiff that he did not owe and, consequently, violated the Fair Debt Collection Practices Act and Maryland state law. Plaintiff seeks actual, statutory, and punitive damages, as well as costs and reasonable attorney's fees. Defendants moved to dismiss and, alternatively, for summary judgment. (ECF No. 6.) Plaintiff amended his complaint. Defendants again moved to dismiss and, alternatively, for summary judgment. (ECF No. 11.) The motions have been fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the Court will deny without prejudice Defendants' motion for summary judgment. And, the Court will deny in part and grant in part Defendants' motion to dismiss the amended complaint.

### I.    *Background*

At the motion to dismiss stage, the Court takes the allegations of the complaint as true, *see, e.g.*, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997), and construes any disputed

1

allegations in the light most favorable to the plaintiff, *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 376 n.32 (D. Md. 2004) ("[R]esolution of [a] factual dispute is inappropriate when ruling on a motion to dismiss . . . ."). Here, the Court summarizes Plaintiff's allegations.

Plaintiff had a credit card with Providian Bank. Plaintiff used the credit card "primarily for personal, family or household purposes." (Am. Compl. ¶ 8, ECF No. 9.) Plaintiff incurred a debt on this credit card. (*Id.*) In 2005, Centurion Capital Corp., an assignee of Providian Bank, obtained a judgment against Plaintiff for payment of the debt in Maryland state court. (*Id.* ¶ 9.)

Defendant Palisades is an entity that focuses on collecting, by mail or telephone, debts that are in default. (*Id.* ¶ 5.) In April 2007, Centurion assigned the debt to Defendant Palisades. (*Id.* ¶ 10.) Defendant Palisades retained Asset Acceptance to collect the Debt. (*Id.* ¶ 11.)

In September 2011, Plaintiff satisfied the debt in full by paying Asset Acceptance. (*Id.* ¶ 12; Compl. Exh. A, 9/16/11 Ltr., ECF No. 1-1.) Plaintiff's communications with Asset Acceptance referred to his debt with Providian but made no mention of Palisades. (Am. Compl. ¶ 13.) Plaintiff alleges that "Defendants knew, or should have known, that the Debt was paid in full by Plaintiff in September 2011." (*Id.* ¶ 14.) But, Defendant Palisades did not file a satisfaction in Maryland state court. (*Id.* ¶ 15.)

Defendant Palisades retained Defendant Protas, a law firm, to collect the debt (now for the second time). (*Id.* ¶ 16.) Like, Defendant Palisades, Defendant Protas focuses on collecting, by mail or telephone, debts that are in default. (*Id.* ¶ 6.) Starting in December 2017, Defendants attempted to collect the allegedly satisfied debt by serving bank levies and wage garnishment on third parties, including Plaintiff's prior employer. (*Id.* ¶ 17–21.) It appears that Plaintiff did not inform Palisades of its mistake because "Plaintiff was unaware that the debt at issue was related to the already-paid Providian account." (*Id.* ¶ 26.) Instead, Plaintiff tried to stop the collection

efforts by filing, on December 13, 2017, a Motion for an Exemption from Garnishment, which the Maryland state court granted.  (*Id.* ¶ 27, 28.)

On January 26, 2018, in the same state court action, Defendants filed a Request for Judgment-Garnishment, meaning a request that a judgment be entered to facilitate the transfer of funds from Plaintiff to Defendants.  (*Id.* ¶ 31–32.)  This filing, like the others filed by Defendants in state court, was signed by Defendant Protas, pursuant to Maryland Rule 1-311,[1] indicating that to the best of its knowledge, information, and belief, there were good grounds to make the filings. (*Id.* ¶ 22, 33.)   As a result of the request, funds were taken from Plaintiff's bank account; his account was overdrawn; the bank charged him fees for the overdrawn account; and his account was closed.  (*Id.* ¶ 35–38.)  Plaintiff has not been reimbursed for this withdrawal.  (*Id.* ¶ 39.)

On December 19, 2018, Plaintiff filed suit in this Court.  (Compl., ECF No. 1.)  Plaintiff alleges that he "suffered actual damages in the form of loss of access to his funds, lost wages, bank charges, closure of his bank account, and emotional distress, including humiliation, embarrassment, stress, anxiety, and loss of sleep."  (Am. Compl. ¶ 45.)

## II.   *Analysis*

The amended complaint includes four counts.  Plaintiff claims that Defendants (1) violated three provisions of the Fair Debt Collection Practices Act, (2) violated four provisions of the Maryland Consumer Debt Collection Act, (3) violated one provision of the Maryland Consumer Protection Act, and (4) committed an abuse of process under Maryland state law.  Defendants move to dismiss the amended complaint and, in the alternative, for summary judgment.  The Court turns to summary judgment first.

---

[1]      *See* Md. Rule 1-311(a) (requiring "[e]very pleading and paper of a party represented by an attorney shall be signed by at least one attorney"); Md. Rule 1-311(b) ("The signature of an attorney on a pleading or paper constitutes a certification that the attorney has read the pleading or paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for improper purpose or delay.").

### A. *Motion for Summary Judgment*

In moving for summary judgment, Defendants attach eight exhibits.  These exhibits include the state court case docket sheet, state court filings, the September 2011 letter, and affidavits from the Defendants.  Plaintiff opposes consideration of summary judgment and attaches an affidavit pursuant to Federal Rule of Civil Procedure 56(d).  Because considering summary judgment would be premature, the Court will deny without prejudice Defendants' motion for summary judgment.

"Rule 56(d) requires 'that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016) (quoting *Nguyen v. CAN Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).  Rule 56(d) motions "are 'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment motions." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014) (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)).  "A court should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).  "But a court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Id.*

To raise the issue that discovery is needed, the summary judgment opponent typically must file a Rule 56(d) affidavit explaining the specific reasons the opponent cannot present the facts essential to its opposition without the needed discovery, *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), and listing the specific evidence that the opponent seeks to obtain, *Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011). The affidavit "cannot

conclusorily state that additional discovery is required" and, instead, "must identify the probable facts not yet available." *Ahmed v. Salvation Army*, Civ. No. CCB-12–707, 2012 WL 6761596, at *10 (D. Md. Dec. 28, 2012), *aff'd*, 549 F. App'x 196 (4th Cir. 2013) (per curiam).   If the nonmovant successfully shows through its Rule 56(d) affidavit that for specified reasons it cannot present facts essential to justify its opposition, "the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

In Plaintiff's opposition motion, he argues that consideration of summary judgment would be premature and identifies three factual disputes that necessitate discovery: the nature of the debt, Defendants' knowledge, and Defendants' intent, especially in relation to the bona fide error defense.  Plaintiff attaches a Rule 56(d) affidavit, which lists the types of evidence Plaintiff would hope to obtain during discovery.  (Pl. Opp. Mot. Exh. B, ECF No. 12-3.)  Because the three issues are genuinely disputed and because Plaintiff has shown that certain pieces of evidence would shed light on the disputed issues, discovery is needed.

Whether the debt at issue is actually two debts or a single debt is a disputed factual issue. In the complaint, Plaintiff alleges that the debt he satisfied with Asset Acceptance is the same debt that the Defendants attempted to collect.  Defendants have argued that the Debts are separate, attaching an affidavit asserting that Defendants and Asset Acceptance pursued debts with two different account numbers.  (Def. Mot. Dismiss, Exh. 8, ECF No. 11-11.)  In opposition, Plaintiff argues the Court "cannot determine at this stage whether the companies typically assign different account numbers, whether the different account numbers here represent the same debt, and whether Asset Acceptance in fact collected on behalf of Palisades—or on behalf of its predecessors-in-interest." (Pl. Opp. Mot. at 8, ECF No. 12.)  The Court agrees.  In its Rule 56(d) affidavit, Plaintiff

lists potential evidence to resolve this dispute, e.g., communications amongst Defendants and creditors, including Asset Acceptance, regarding the debt.  (Pl. Opp. Mot. Exh. B, ECF No. 12-3.)

The other two disputed issues involve Defendants' knowledge and intent.  "[S]ummary judgment prior to discovery can be particularly inappropriate when a case involves complex factual questions about intent and motive."  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247 (4th Cir. 2002); *see also McCray*, 741 F.3d at 484 ("As we have emphasized, 56(d) motions for more time to conduct discovery are proper in cases such as this one, where the main issue is one of motive and where most of the key evidence lies in the control of the moving party.").  The parties dispute whether Defendants knew the debt was satisfied.  Defendants present affidavits averring that they had no knowledge of the alleged satisfaction.  (Def. Mot. Dismiss, Exh. 5, ECF No.11-8.)

The parties also dispute Defendants' intent.  In moving for summary judgment, Defendants raise the bona fide error defense to the FDCPA claims.  "To qualify for the bona-fide-error defense, a defendant is required to show, by a preponderance of the evidence, that (1) it unintentionally violated the FDCPA; (2) the violation resulted from a bona fide error, and (3) it maintained procedures reasonably adapted to avoid the violation."  *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 389 (4th Cir. 2014).  Thus, one of the essential elements of the defense is that Defendants unintentionally violated the FDCPA.  *Id.*  A party's knowledge and intent are factual issues that often necessitate time for discovery.  Defendants' knowledge about the debt and intent in pursuing the debt are factual issues that necessitate discovery here.

Plaintiff has shown that consideration of summary judgment is premature, and discovery is needed.  Accordingly, this Court will deny without prejudice Defendants' motion for summary judgment.  The Court turns to the sufficiency of Plaintiff's complaint.

### B.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a plaintiff's complaint.  *Presley v. Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.  8(a)(2).  To survive a motion to dismiss, the plaintiff must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility exists where the facts allow the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But, inferring the "mere possibility of misconduct" is not enough to establish a plausible claim.  *Id.* at 679.  Moreover, a complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  Here, Defendants devote much of their eighteen-page motion to making arguments and presenting evidence in support of their motion for summary judgment. As such, Defendants make only a handful of arguments in support of their motion to dismiss.  In the interests of fairness, the Court will only address those challenges to the complaint's sufficiency that Defendants raised and to which Plaintiff had the opportunity to respond.  *See, e.g.*, *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) ("Due process, we have cautioned, requires that a plaintiff be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims.").

### 1.  Fair Debt Collection Practices Act (FDCPA)

Count I of the complaint alleges violations of the FDCPA.  The purpose of the FDCPA is to protect consumers from abusive or deceptive practices of debt collectors, while simultaneously protecting debt collectors from competitive disadvantage.  *United States v. Nat'l Fin. Servs., Inc.*,

98 F.3d 131, 135 (4th Cir. 1996).  Plaintiff claims that Defendants violated the FDCPA by making

"false representation[s] of . . . the character, amount, or legal status of any debt," 15 U.S.C.

§ 1692e(2)(A), by using "false representation or deceptive means to collect or attempt to collect

any debt," § 1692e(1), and by using "unfair or unconscionable means to . . . attempt to collect any

debt" and, in fact, collecting any amount of that debt, § 1692f(1).  Defendants challenge the

sufficiency of Plaintiff's FDCPA claims by arguing that the claims are time-barred and that

Plaintiff has failed to state a plausible FDCPA claim.

### a.  Statute of Limitations

Defendants argue that Plaintiff's FDCPA claims are barred by the applicable one-year

statute of limitations.  *See* 15 U.S.C. §1692k(d) ("An action to enforce any liability created by this

subchapter may be brought . . . within one year from the date on which the violation occurs.").  A

court may dismiss a complaint on statute of limitations grounds "if the time bar is apparent on the

face of the complaint."  *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).  Thus,

Defendants have the burden of establishing that the time bar is apparent on the face of the

complaint, and Defendants have not carried that burden here.

A FDCPA claim accrues on "the date of the first violation, and subsequent violations of

the same type do not restart the limitations period."  *McGhee v. JP Morgan Chase Bank, N.A.*, Civ.

No. DKC-12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013) (quoting *Fontell v.

Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012)); *see Bey v. Shapiro Brown & Alt, LLP*, 997 F.

Supp. 2d 310, 316 (D. Md. 2014) ("What Plaintiff characterizes as subsequent violations are better

viewed as communications regarding the first violation, not as discrete and separate violations."),

*aff'd*, 584 F. App'x 135 (4th Cir. 2014).  However, under the discovery rule, the claim does not

accrue until the plaintiff has reason to know of the violation.  *Stewart v. Bierman*, 859 F. Supp. 2d

754, 760 (D. Md. 2012) (holding FDCPA claim accrued for limitations purposes upon notice of

the allegedly fraudulent foreclosure), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th

Cir. 2013) (per curiam) (unpublished); *see, e.g.*, *Brooks v. Cama Self Directed IRA, LLC*, Civ. No.

JKB-18-2299, 2019 WL 418412, at *5 (D. Md. Jan. 31, 2019) (holding claims time-barred where

plaintiff had notice of alleged violations for more than a year before filing but not where plaintiff

received filing and notice within a year of filing suit).

The parties dispute when Plaintiff knew, or had reason to know, of the alleged FDCPA

violations.  These are the relevant factual allegations.  Defendants first attempted to collect the

allegedly satisfied debt by serving bank levies and wage garnishment on third parties in October

2017.  (Am. Compl. ¶ 17–21.)  Plaintiff "was unaware that the debt at issue was related to the

already-paid Providian account."  (*Id.* ¶ 26.)  Thus, rather than informing Defendants of the

mistake, Plaintiff tried to stop the collection efforts by moving for exemption from garnishment

on December 13, 2017.  (*Id.* ¶ 27, 28.)  Defendants moved for a garnishment judgment on January

26, 2018.  (*Id.* ¶ 31–32.)  Plaintiff filed suit on December 19, 2018.  (*See* Compl.)  Defendants

argue that the statute of limitations should run from October 2017 because that is when the alleged

violations began.  (Def. Mot. Dismiss at 9, ECF No. 11-3.)  At the latest, Defendants argue that

the statute of limitations should run from December 13, 2017, because Plaintiff exhibited

knowledge of the violations by moving for an exemption in December.  (*Id.*)  Plaintiff argues that

the statute of limitations should run from January 26, 2018 because the FDCPA violations that he

has alleged, like the alleged misrepresentation and actual collection, occurred for the first time in

January.  (Pl. Opp. Mot. at 12–13.)

For purposes of resolving this motion to dismiss, the Court concludes that the statute of

limitations ran from January 26, 2018.  Plaintiff has alleged that, in December, he did not know

that Defendants were pursuing the debt he had already satisfied, so he had no reason to know of a FDCPA violation. (Am. Compl. ¶ 26.) In addition, Defendants allegedly violated § 1692f(1) for the first time on January 26, 2018, starting the tolling for that claim at that time. *See* National Consumer Law Center (NCLC), Foreclosures and Mortgage Servicing §§ 12.3.4.4 (5th ed. 2014) ("[E]ven the courts that hold that the statute of limitations is not restarted by a repetition of the violation in the state court complaint or summons do not apply that approach where the violations within the statute of limitations are a different type from the time-barred FDCPA violations."). Taking the allegations of the complaint as true and construing any disputed allegations in Plaintiff's favor, Plaintiff had no reason to know of any FDCPA violations until January 26, 2018. (*See* Am. Compl. ¶ 34.) On the face of the complaint, the FDCPA claims are not barred by the statute of limitations.

### b. *Sufficiency of the FDCPA Allegations*

To state a successful FDCPA claim, a plaintiff must allege that (1) plaintiff was the object of collection activity arising from consumer debt; (2) defendant fits within the FDCPA's definition of a debt collector; and (3) defendant engaged in an act or omission prohibited by the FDCPA. *Stewart*, 859 F. Supp. 2d at 759. Defendants argue that Plaintiff has not alleged sufficient facts to show that the collection activity arose from consumer debt.

According to the FDCPA, "'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "'Debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." § 1692a(5). Defendants argue that Plaintiff's allegation—that the debt "arose out of credit card transactions which were primarily for personal, family or household

purposes" (Am. Compl. ¶ 8)—is conclusory and insufficient.   (Def. Mot. Dismiss at 10–12.)

Plaintiff argues that the allegation suffices and points out that he opened the credit card in his own

name, not in the name of a business.  (Pl. Opp. Mot. at 13.)  Plaintiff offers to amend the complaint

to add that he used "the underlying credit card to purchase purely personal goods, including

groceries, food, personal entertainment, gas, and personal travel." (*Id.* at 14.)

Plaintiff sufficiently alleged that the collection activity arose from a consumer debt by

stating that the credit card was used for "personal, family, or household purposes."  (Am. Compl.

¶ 8).  The allegation is sufficient on its own.  *See Grant-Fletcher v. Brachfeld Law Grp.*, Civ. No.

WMN-11-2072, 2012 WL 2523094, at *2 (D. Md. June 28, 2012) (holding plaintiff sufficiently

alleged that she was a consumer under the FDCPA because "while [p]laintiff does not list and

describe each purchase made on the credit card, the allegations specify that the card was used only

for personal and household purchases").  The fact that Plaintiff took out the credit card in his own

name, rather than the name of a business, supports this allegation.  *See Smith v. EVB*, 438 F. App'x

176, 179 (4th Cir. 2011) (holding debt was a consumer debt because substance of the transaction

was personal in that the loan was taken out in his own name and concerned his personal finances).[2]

Plaintiff has put forward sufficient facts to allege FDCPA claims that are plausible on their

face; therefore, Count I against both Defendants will not be dismissed.

### 2.  Maryland Consumer Debt Collection Act (MCDCA)

Count II alleges violations of the MCDCA.  Under the MCDCA, a debt collector may not:

"[d]isclose or threaten to disclose information which affects the debtor's reputation for credit

---

[2]        It is unclear what more a complainant would be expected to allege at this stage.  As Plaintiff's offer to amend the complaint shows, more detail into the type of expenses hardly gives a court or potential defendants a fuller picture of the allegations at hand.  Personal expenses are exactly what one would expect: groceries, entertainment, gas, etc. In arguing that the allegation is insufficient, Defendants cite to one case from the Southern District of Ohio, which cites a District of Maryland case.  That case, *Piper v. Meade & Assocs., Inc.*, 282 F. Supp. 3d 905, 912 (D. Md. 2017), is inconsistent with other District of Maryland cases and, regardless, is not binding on this Court.

worthiness with knowledge that the information is false," Md. Code Ann., Com. Law §§ 14-202(3), "disclose or threaten to disclose to a person other than the debtor or his spouse . . . information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information," § 14-202(5), "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist," § 14-202(8), or engage in conduct that violates the FDCPA, § 14-202(11).

Defendants argue that Plaintiff failed to state an MCDCA claim by alleging insufficient facts to establish a consumer transaction under the MCDCA. The MCDCA definition of consumer transaction tracks the FDCPA's definition of consumer debt. *Compare* 15 U.S.C. § 1692a(5) (defining consumer debt as any obligation "to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes"), *with* Md. Code Ann., Com. Law § 14-201(c) (defining consumer transaction as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes."). For the same reasons that Plaintiff's debt is "consumer" under the FDCPA, Plaintiff's transaction is "consumer" under the MCDCA.

Defendants also argue that Plaintiff failed to state an MCDCA claim by alleging insufficient facts to establish that Protas had knowledge that the underlying debt was satisfied. The MCDCA claims that have a knowledge requirement sound in fraud and must meet heightened pleading requirements. Fed. R. Civ. P. 9(b) (requiring fraud to be pled with "particularity"); *see also Amenu-El v. Select Portfolio Servs.*, Civ. No. RDB-17-2008, 2017 WL 4404428, at *3–5 (D. Md. Oct. 4, 2017) (applying heightened pleading standards to claims under the MCDCA). Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as well

as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (2d ed. 1990)). "[Rule] 9(b) provides that elements of fraud such as knowledge and intent may be 'averred generally,'" but "that does not lower the ordinary pleading standard of Rule 8, which requires that allegations have enough factual support to be at least plausible." *Zervos v. Ocwen Loan Servicing, LLC*, Civ. No. JKB-11-3757, 2012 WL 1107689, at *5 (D. Md. Mar. 29, 2012).

Consequently, the question before the Court is whether Plaintiff has plausibly alleged that Defendants acted with knowledge of the debt's invalidity. *See Stewart*, 859 F. Supp. 2d at 769. Under the MCDCA, "[a]ctual knowledge or reckless disregard as to information's falsity satisfies the statute's 'knowledge' requirement." *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515, 538 (D. Md. 2019) (citing *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 128 (4th Cir. 2014)); *see, e.g.*, *Peckey v. Bank of Am., N.A.*, Civ. No. RDB-14-433, 2015 WL 1622967, at *4 (D. Md. Apr. 10, 2015) (holding plaintiff sufficiently alleged actual knowledge where plaintiff sent defendant confirmation of the debt satisfaction and, alternatively, reckless disregard where plaintiff responded to a message about the debt that should have caused defendant to investigate).

Plaintiff's conclusory allegation—that "Defendants knew, or should have known, that the Debt was paid in full by Plaintiff in September 2011" (Am. Compl. ¶ 14)—is insufficient to satisfy the knowledge requirement at this stage. *See Lewis v. McCabe, Weisberg & Conway, LLC*, Civ. No. DKC-13-1561, 2015 WL 1522840, at *5 (D. Md. Apr. 1, 2015) ("The conclusory allegation that McCabe did not have a right to foreclose and that it knew it had no right to foreclose because 'Defendants were not in possession of the original Note,' is insufficient to plead a plausible

13

violation of Section 14202(8) of the MCDCA.").  But, Plaintiff also alleges facts that give rise to a reasonable inference that Defendant Palisades knew the debt had been satisfied.  Defendant Palisades retained Asset Acceptance to collect the debt,[3] and, in September 2011, Plaintiff paid Asset Acceptance to satisfy the debt.  (Am. Compl. ¶ 11–12.)  Asset Acceptance issued Plaintiff a letter confirming that the debt was satisfied.  (Compl. Exh. A, 9/16/11 Ltr.)  It is reasonable to infer that, because Defendant Palisades retained Asset Acceptance to collect the debt, Defendant Palisades knew, or should have known, when the debt was collected.  However, because it appears that Defendant Palisades retained Defendant Protas after its dealings with Asset Acceptance, there are not sufficient facts to infer that Defendant Protas had any knowledge that the debt was collected.

Plaintiff has put forward sufficient factual allegations to state a MCDCA claim against Defendant Palisades but not against Defendant Protas.  Thus, the Court will grant Defendants' motion to dismiss Count II as to Defendant Protas.

### 3.  *Maryland Consumer Protection Act (MCPA)*

Count III alleges a MCPA violation against Defendant Palisades.  *See* Md. Code Ann., Com. Law § 13-301(14)(iii) ("Unfair, abusive, or deceptive trade practices include any: . . . [v]iolation of a provision of: . . . Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act").  "[A] violation of the MCDCA is a per se violation of the MCPA."  *Cooke v. Carrington Mortg. Servs.*, Civ. No. TDC-18-0205, 2018 WL 6323116, at *8 (D. Md. Dec. 3, 2018) (holding plaintiff failed to state an MCPA claim for the alleged MCDCA violation because the

---

[3]     Defendants dispute that Defendant Palisades ever retained Asset Acceptance, (Def. Mot. Dismiss at 5–6), but the Court will not resolve factual disputes at the motion to dismiss stage, *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d at 376 n.32.

court had already held that plaintiff failed to state a MCDCA claim).  Because the MCDCA claim survives the motion to dismiss, so does the MCPA claim.

### 4.  *Abuse of Process*

Count IV alleges the tort of abuse of process.  To state an abuse of process claim, a plaintiff must allege that (1) "defendant willfully used process after it has issued in a manner not contemplated by law," (2) "defendant acted to satisfy an ulterior motive," and (3) "damages resulted from the defendant's perverted use of process."  *One Thousand Fleet Ltd. v. Guerriero*, 694 A.2d 952, 956 (Md. 1997).  "The archetypal abuse of process claim arises from the use of criminal process to coerce an individual to pay a debt in order to avoid arrest and prosecution." *Callender v. Callender*, Civ. No. TDC-17-3249, 2018 WL 3609536, at *5 (D. Md. July 26, 2018). Defendants argue, and the Court agrees, that Plaintiff fails to allege this cause of action on the first and second elements.

Plaintiff asserts that "Maryland law does not contemplate the use of writs of execution, wage garnishment, and bank levies as a means to collect on debts that have already been satisfied in full."  (Compl. ¶ 69.)  Although the alleged process was not meant to collect on satisfied debts, it was meant to collect debts, and whether the debt here has been satisfied is genuinely disputed. *See Metro Media Entm't, LLC v. Steinruck*, 912 F. Supp. 2d 344, 352 (D. Md. 2012) (holding insufficient allegations for abuse of process where party requested issuance of a subpoena for the lawful purpose of discovering the proper defendants); *McCauley v. Suls*, 716 A.2d 1129, 1136 (Md. Ct. Spec. App. 1998)  (holding plaintiff failed to state a claim for abuse of process because defendant used process in a manner contemplated by law when defendant issued subpoena "to gain an unfair advantage in litigation").  Plaintiff's next assertion—that "Defendants sought, issued and served the Writs in an attempt to extort, deceive and harass Plaintiff into paying amounts not owed"

(Compl. ¶ 70)—does not allege the second element.  In fact, the assertion concedes that Defendants sought to garnish wages, which was not an ulterior motive but rather the stated motive.

Even viewing the allegations in the light most favorable to Plaintiff, Defendants used the processes as contemplated by law and demonstrated no ulterior motive.  Here, Plaintiff has a complaint with the use of the process as applied to his case but not with any abuse of process.  *See Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 207 (Md. 1985) (holding, where plaintiff suffered attachment of wages by writ of garnishment for a debt she had already satisfied, plaintiff had a proper complaint with the issuance of process but not with the abuse of process).  The Court will dismiss Count IV as to both Defendants because Plaintiff has failed to state a plausible claim for abuse of process.

### III.   Conclusion

For the foregoing reasons, an Order shall enter denying without prejudice Defendants' motion for summary judgment and denying in part and granting in part Defendants' motion to dismiss the amended complaint.

DATED this 26th day of July, 2019.

BY THE COURT:

_____/s/_____

James K. Bredar
Chief Judge